COATES & RAINES *v.* GREAT AMERICAN INS. CO.

5-2828                                                          362 S. W. 2d 438

Opinion delivered December 3, 1962.

*McMillen, Teague & Coates,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

JIM JOHNSON, Associate Justice. This case involves a suit by a general insurance agency against an insurer for services rendered the insurer after notice of termination of the general agency contract had been given.

On October 1, 1952, appellee, the Great American Insurance Company, entered into a contract with appellant, Coates & Raines, a partnership consisting of James M. Coates, Sr., Sam P. Raines, and others, wherein appellant was appointed general agent for the State of Arkansas for appellee. Generally stated, the business of appellant is that of an insurance general agent for fire and casualty insurance companies. Under the contract the duties of the general agent were to make agency plants with agents throughout Arkansas in behalf of the insurer, appellee, to solicit business for appellee from local agents, to supervise losses, to underwrite for appellee the business submitted by local agents, and to remit cash balances to appellee whether or not such balance had been collected from the local agents.

Paragraph Eighth of the contract allowed appellant an over-riding commission on net premiums of the business written for appellee in Arkansas through appellant's activities. This paragraph is as follows:

"EIGHTH: That the Company will allow the General Agents an over-riding commission of Ten percent (10%) of the net premiums, . . .; it being understood that the words 'net premiums' wherever used in this agreement means gross premiums less return premiums and premiums for reinsurance effected by the General Agents."

According to Paragraph Ninth of the contract, appellee agreed to allow appellant an additional contingent commission. This reads as follows:

"NINTH: That the Company will allow the General Agents as further compensation a contingent commision of ten (10) percent of the results that obtain from the business written through the General Agency to be computed in the following manner at the close of each calendar year:"

. . . [Here follows a list of debits and credits]

"The debit items shall be deducted from the credit items and the remainder shall be the result upon which the ten (10) percent contingent shall be calculated."

During the summer of 1958 appellee decided to handle its future business in Arkansas through direct company employees and not through appellant general agency. On July 1, 1958, a vice-president of appellee presented a letter to appellant, which letter complied with all the requirements of termination of the agency contract between appellee and appellant under Paragraph Eleventh of the agency contract. Paragraph Eleventh is as follows:

"ELEVENTH: That this agreement is unlimited as to its duration but that it may be terminated at any time by either party giving 90 days' written notice, in which event the payment of compensation as herein provided that may be found at such time to be due shall be in liquidation of all demands of the General Agents on the Company, and it is expressly understood and agreed that if for any reason the Company shall deem that its interests require termination of this contract, the General Agents are to turn over to it all registers and other records and supplies of the Company in possession of the General Agents; that the General Agents are to make no endeavor to displace the Company from any of the agencies where it may then be located, and in general that the business of the Company is to be turned over to it in its entirety free from any attempt on the part of the General Agents to divert it to other channels, though this clause shall not be understood as preventing the General Agents from planting with the agents of the Company at any time the agency of any other company which may be represented by them."

Subsequent to the termination letter of July 1, 1958, which would have the effect of terminating all business relations between appellant and appellee, but prior to the termination date of October 10, 1958, appellee and appellant established a relationship whereby appellant would write no new policies for appellee, but appellant would continue to service all policies of appellee then on their books until the expiration dates of the various policies. Thereafter appellant continued to service the "run-off" business of appellee until the present date

and is continuing to service such business. During the year 1959, appellee paid appellant the standard ten percent overriding commission provided in Paragraph Eighth, *supra*. At the expiration of 1959, appellee refused to pay the contingent commission (Paragraph Ninth, *supra*) on the underwriting profit, relying on the provisions of Paragraph Ten of the contract, which is as follows:

"TENTH: That the first contingent statement shall cover the period from the date of this agreement to December 31st, 1953. If this agreement should be terminated, contingent statement shall be made at the end of the calendar year in which such termination becomes effective. All losses and expenses for the full calendar year shall be included, and no further contingent statement shall be made nor contingent commission be allowed thereafter."

On July 19, 1960, appellant filed its original complaint seeking recovery for contingent commission under Paragraph Ninth, *supra* of the contract. Appellant thereafter amended its complaint, seeking recovery, alternatively, on the basis of implied contract or on the basis of *quantum meruit*, if the court found—against them on the basis of modified contract.

The Chancellor dismissed the complaint and its amendments, from which appellant appeals. For reversal, appellant generally reiterates his contentions urged in the trial court.

After careful review of the record, we find that the able opinion of the learned Chancellor fairly represents our views. We herewith adopt it as our own. The opinion is as follows:

"I have concluded that the original contract between plaintiffs and defendants was effectively terminated by the notice given by the defendant in July, 1958. I have also concluded that the subsequent arrangements regarding the 'run-off' business does not constitute a modification and extension of the original contract, but rather a different agreement. It is clear from the actions of the

parties in paying and receiving the 10% overriding commission that the parties agreed to such payment to the plaintiffs as compensation for servicing of the 'run-off'' business. However, it is my opinion that the provisions for the contingent commission found in the original contract cannot be incorporated into the new agreement in the absence of proof of an express or implied agreement to that effect. Nor can the contingent commission be allowed under the theory of a modification of the old agreement, since none of the terms of the old agreement were agreed to remain in force.

"All contingent commissions due to the plaintiff under the original contract have been fully paid through December 31, 1958, as provided in that contract. I do not believe that the evidence supports any implied agreement that such contingent commissions were to be paid for the 'run-off' business, and certainly there is nothing in the record substantiating an express agreement. In fact, Mr. Coates' testimony reflects that shortly after the arrangements regarding the 'run-off' business was negotiated (probably in August, 1958), Mr. Coates raised the question of contingent commissions with an official of the defendant while on a trip to New York. According to Mr. Coates' testimony, this suggestion was 'laughed off' with the remark, 'Well, you would never earn it.' In the face of this testimony, it seems clear that the defendant had neither expressly or impliedly agreed to the continuation of the contingent commissions called for in the original contract, and I find no evidence which would support a finding that the termination rights of the defendant have been modified or waived. Furthermore, Exhibits 7 through 10 [correspondence between the parties] show beyond doubt that again in June, 1959, the defendant was expressly denying its liability for contingent commissions.

"The services performed by the plaintiffs after the termination of the original contract, while substantial and valuable to the defendant, were substantially less than services which had been performed by the plaintiffs under the original contract. The direct and cross-

examination of Mr. Coates makes this clear. On cross-examination, when asked by defendant's counsel to describe the duties of the general agency, Mr. Coates began by reciting duties such as appointing agents, cultivating agents, teaching agents the business, soliciting business, and developing business through the state. It is my finding that these elements of a general agent's duties are at least as important as the servicing of contracts already written, settlement and investigation of claims, and other activities. It is my opinion that the defendant would not have agreed to pay the same compensation to the plaintiffs for the mere servicing of existing contracts that it had been paying while plaintiffs were performing all of the duties of a general agent. It is my finding that defendant did not agree to do so, either expressly or impliedly.

"During the trial I indicated that I did not believe that the case should be governed by the doctrine of *quantum meruit*. However, because of the request in the brief of the plaintiffs that the Court reconsider this issue, I have done so. I have accepted as true the testimony offered by plaintiffs to the effect that all general agency contracts normally and ordinarily include a basic commission and a contingent commission computed in accordance with the formulas set forth in the original contract in this case, and that such a contingent commission would be considered reasonable compensation. As a matter of fact, the record reflects that the attorney for the defendant stipulated that this was true as a matter of fact. I have therefore accepted this evidence as admitted and undisputed. It is plaintiffs' position that these facts require a finding that 'reasonable value' for plaintiffs' services would have to include the 10% contingent commission. I do not agree. In this case the evidence is clear that, after October 1, 1958, plaintiffs were not acting as general agents for defendant in the usual and ordinary way. Therefore, even though this testimony is accepted as true, it is the Court's finding that fair and reasonable value of the restricted services being performed by the plaintiffs during 1959 would not exceed the 10% overriding commission that plaintiffs have already re-

ceived. It is, therefore, my opinion that even under the theory of *quantum meruit,* the plaintiffs are not entitled to recover judgment for any additional amount.

"It will, therefore, be the finding of the Court that plaintiffs are not entitled to judgment and that judgment herein should be entered in favor of the defendant."

Affirmed.

ROBINSON, J., not participating.